C. Raymond Shafer and Evelyn E. Shafer v. Commissioner.
Shafer v. Commissioner
Docket No. 81830.
United States Tax Court
T.C. Memo 1961-196; 1961 Tax Ct. Memo LEXIS 151; 20 T.C.M. (CCH) 977; T.C.M. (RIA) 61196; June 30, 1961
*151 Held, that certain expenses incurred by the principal petitioner for lodging and meals while carrying on his carpenter trade in two cities other than that of his principal residence, and also for maintaining and operating an automobile used in traveling between said cities and his principal residence on weekends and holidays, do not qualify as trade or business expenses "while away from home," within the meaning of sections 62(2)(B) and 162(a)(2) of the 1954 Code. William F. Roberts, Esq., for the petitioners. Richard G. Worden, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined deficiencies in the income taxes of petitioners for the years 1955, 1956 and 1957, in the respective amounts of $269.25, $260.52, and $498.97. The sole issue for decision is whether certain expenses incurred by petitioner C. Raymond Shafer for lodging and meals while carrying on his trade as a carpenter in two cities other than that of his principal residence, and also for maintaining and operating an automobile which he used in traveling between said cities and his principal residence on weekends and holidays, qualify as deductible trade or business expenses "while away from home," within the meaning of sections 62(2)(B) and 162(a)(2) of the 1954 Code. All other issues raised in *153 the pleadings were abandoned by petitioners at the trial. Findings of Fact Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by reference. Petitioner C. Raymond Shafer (hereinafter called "petitioner") and Evelyn E. Shafer are husband and wife. For at least 14 or 15 years their principal residence has been in Modesto, California. They filed a joint income tax return for each of the taxable years involved, with the district director of internal revenue at San Francisco, California. Since about 1924, petitioner has been a carpenter; and until 1955, he carried on his trade principally in the Modesto area, where he worked as an employee for various firms and individuals. Also until that time, he was a member of the Modesto local of his union, through which he obtained most of his employments. Petitioner's wife Evelyn, at all times here material and since about 1930, was employed as an office worker and secretary at the plant of Barium Products, Ltd., in Modesto. During the taxable years, she received wages or salary from this company in amounts ranging from about $4,500 to about $4,700 per year; *154 and in connection therewith she had certain seniority privileges and accrued pension rights which she would lose if she resigned. At the beginning of the year 1955, petitioner left Modesto because there was a shortage of carpenter work in that area; and he went to San Mateo, California (located about 95 miles from Modesto) where he sought and obtained employment. He did not then know how long he would work in the San Mateo area, but he intended to remain there indefinitely. At this same time, he discontinued his membership in the Modesto local of his union, and became a member of the San Mateo local of the union with which he has at all times since been affiliated. His reason for this transfer of his union membership was to enable him to use the facilities of the San Mateo local in obtaining jobs in the latter area, without having to pay dues also to the Modesto local. In January 1955, petitioner obtained employment as a carpenter with a firm in San Mateo; and thereafter all his employments throughout the 3 taxable years here involved, with two exceptions, were in the San Mateo area, and were obtained through the San Mateo local. These two exceptions were: That in April 1955 he *155 worked for one week in Modesto; and that from April 23 to December 7, 1956, he worked on another job in Antioch, California (located about 65 miles from Modesto). At the time he took the Antioch employment, there was work available for him in San Mateo; but he went to Antioch because he was acquainted with the job superintendent. This job was for an indefinite period, and actually lasted about 7 months. During that period he drove his car back and forth to Modesto, but he did not claim any of these automobile expenses as deductions on his return for that year. At the time of the trial herein, petitioner was still working in the San Mateo area, and obtaining jobs there through the San Mateo local of the union. From April 1955 through April 1956, and also during the entire year 1957, petitioner rented a room in San Mateo. His wife did not accompany him to that city; but rather, during the years here involved and also at all other times here material, she continued to live at the residence in Modesto. The reasons for her not accompanying petitioner to San Mateo were, not only that she and petitioner had the house in Modesto, but that she did not want to give up her job there and surrender *156 the seniority privileges and anticipated pension benefits which she was accruing. Petitioner conceded that, except for these factors, it was possible that she might have come to San Mateo to live with him. The attached schedule shows: (1) The periods and locations of petitioner's various employments during the taxable years, the names of his employers, and the amounts of compensation which he received from each; and also (2) the amounts of the compensation which his wife received from her employment in Modesto during these same years: Period of
Location
Employment
Employer
California
Amount
Raymond - 1955
January
Adam Arras & Son
San Mateo
$ 571.66
February and March
Unemployed
Modesto
April (1 week)
Dan Richardson
Modesto
111.00
April-August
Mildred H. May
San Mateo
1,845.34
Aug. 10-Sept. 24
E. B. Stephenson
San Mateo
812.00
Sept. 24-Oct.-Nov.
Haas & Haynie Corp.
San Mateo
742.40
December
Doria J. Petrin
San Mateo
696.73
Total earned by C. Raymond Shafer for 1955
$4,779.13
Evelyn - 1955
Jan. through Dec.
Barium Products, Ltd.
Modesto
$4,465.16
Raymond - 1956
Jan. 5-Feb. 2
Doria J. Petrin
San Mateo
$ 516.20
Feb. (10 days)
Krell Building Co.
San Mateo
185.60
Mar. (16 days)
Pacific Development Co.
San Mateo
301.60
Mar. 16-Apr. 20
Associated Construction
San Mateo
672.80
Apr. 23-Dec. 7
Haas & Haynie
Antioch
3,838.70
Dec. (balance)
Unemployed
Modesto
Total earned by C. Raymond Shafer for 1956
$5,514.90
Evelyn - 1956
Jan. through Dec.
Barium Products, Ltd.
Modesto
$4,757.99
Raymond - 1957
(Period not shown)
McGuire & Hester
San Mateo
$ 426.49
Jan. 7-Jan. 11
Carl A. Holvick & Co.
San Mateo
127.40
Jan.
Glang Bros.
San Mateo
77.40
Jan., Feb., March
Associated Constr. & Eng.
San Mateo
2,623.56 [1]
Mar. (6 days)
Joseph F. Ciatti
San Mateo
151.58
April-May
Associated Constr. & Eng.
San Mateo
n1
May
George E. Congdon, III
San Mateo
193.50
May-June
Benjamin L. Miller
San Mateo
409.16
June-July
Younger Constr. Co.
San Mateo
419.20
July (1 week)
Morton Rude
San Mateo
104.80
July (1 week)
Charles H. Seymour
San Mateo
117.90
July (1 week)
Lindo Guerra
San Mateo
177.80
Aug.-Sept.
Barrett Constr. Co.
San Mateo
714.09
Sept.-Oct.
Arnold B. Lahti
San Mateo
334.05
Nov.-Dec.
Associated Constr.
San Mateo
n1
Dec. (balance)
Unemployed
Modesto
Total earned by C. Raymond Shafer for 1957
$5,876.93
Evelyn - 1957
Jan. through Dec.
Barium Products, Ltd.
Modesto
$4,780.68
*157 Petitioner worked on each job until it was completed - which at times was for a week, or a month, or several months; and he then would obtain another job by listing his name on the employment book of the San Mateo local of his union. On some of the jobs he could not tell how long they would last. He always supplied his own tools; he never worked under contract; and he was paid by the week, at an hourly rate. On the joint income tax returns of petitioner and his wife for the years involved, they deducted the following amounts, as trade or business expenses of petitioner for lodging, subsistence and travel "while away from home": 1955
Quarters and subsistence in San Ma-
teo for 38 weeks
$ 880.00
Bridge tolls
26.60
Gasoline and oil
317.28
Total
$1,223.88
1956
Quarters and subsistence in San Ma-
teo for 26 weeks; and in Antioch
for 18 weeks
$1,166.00
Bridge tolls
18.20
Total
$1,184.20
1957
Lodging in San Mateo for 48
weeks $440
Subsistence in San Mateo for 240
days
720
$1,160.00
Automobile expenses: Bridge tolls
$ 33.60
Gas and oil
798.35
Repairs
156.88
License
21.00
Insurance
107.95
Depreciation
479.00
$1,596.78
Less personal use of auto-
mobile for 124 days (com-
puted at 124/365 of
$1,596.78)
542.46
1,054.32
Total
$2,214.32
*158 Petitioner was not reimbursed by his employers for any of the above expenses. It has been stipulated that the automobile expenses related to his travel between Modesto and San Mateo on weekends and holidays. The respondent, in his notice of deficiency, disallowed deduction of all these claimed expenses for all years, on the ground that petitioner was not in a travel status "away from home," while performing duties in San Mateo and Antioch. Opinion Section 162 of the 1954 Code provides, so far as here material: Sec. 162. Trade or Business Expenses. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuant of a trade or business; Also, section 62 of this Code provides in material part: Sec. 62. Adjusted Gross Income Defined. For purposes of this subtitle [Subtitle A - Income Taxes], the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * * *159 (2) Trade or Business Deductions of Employees. - * * *
(B) Expenses for Travel Away from Home - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. Unless the conditions set forth in the foregoing quotations are satisfied, no deductions are allowable for personal or living expenses. Section 262 of the 1954 Code. The meaning of the term "home," as used in the above provisions of the 1954 Code and in a similar provision (section 23(a)(1)(A)) of the 1939 Code, has been considered by this and other courts in numerous cases; and we regard it now to be established by the weight of judicial authority: (1) That the taxpayer's "home" within the meaning of these statutes, is not to be determined by the location of his residence or domicile, but rather by the location of his post of duty (sometimes referred to as his "tax home"), where or from which he carries on his trade or business; (2) that in order for expenses of lodging, meals and travel to qualify for deduction under said statutes, they *160 must have been incurred by the taxpayer in connection with the carrying on of his trade, business, or employment, and also while he was in a travel status away from his post of duty or "tax home"; and (3) that the determination of where the taxpayer's post of duty or "tax home" was located at the time when such expenses were incurred, must be made from a consideration of all the pertinent facts and surrounding circumstances of the particular case. Applying these principles in the instant case, we have reached the following conclusions. 1. San Mateo Expenses. - We are convinced from our consideration and weighing of all the evidence herein, that petitioner's post of duty or "tax home," during all of the taxable years except possibly for the period of about 7 months when he worked in Antioch, was in San Mateo and not in Modesto. He went to San Mateo at the beginning of the year 1955, because of shortage of carpenter work in the Modesto area; and he intended at that time to carry on his carpenter trade in that new area for an indefinite period. Also at that time, he discontinued his union membership in the local of his union in Modesto, and became a member of the local in San Mateo *161 so that he might from time to time thereafter, obtain various carpenter jobs in the latter area, and without paying further dues to the Modesto local. He has at all times since continued to be a member of the San Mateo local and to procure his various jobs as carpenter through the same. During all of the taxable years involved, except for a single 1-week job in Modesto, and another job in Antioch which is hereinafter considered, all of petitioner's employments (estimated by him to be 35 or 40 in number) were carried on by him in the San Mateo area; and, aside from his Antioch employment, his jobs in the San Mateo area produced substantially all the income from his trade or business. The fact that petitioner's wife did not accompany him to San Mateo was due to the special circumstances that she elected not to do so because of her unwillingness to give up her own job in Modesto, and thereby surrender the valued seniority privileges and pension rights which she had accrued over a long period of years. This circumstance does not, in our opinion, affect the determination of the location of her husband's post of duty or "tax home"; for he must be regarded as a separate taxpayer, notwithstanding *162 that she and he filed joint income tax returns for the years involved. See, , affd. (C.A. 5) ; and Robert A. Coerver, 36 T.C. - (May 12, 1961). 2. Automobile Expenses. - The parties have stipulated that the automobile expenses here involved related to his travel between Modesto and San Mateo on weekends and holidays. This indicates that they were not incurred "in pursuit of a trade or business" within the meaning of section 162(a)(2), or "in connection with the performance by him of services as an employee"; but rather that they were personal expenses, incurred for the purpose of enabling him to spend his weekends and holidays with his wife, who had a separate post of duty or "tax home," because of her election to continue her valued employment in Modesto. 3. Antioch Expenses. - The evidence regarding petitioner's employment in Antioch is both incomplete and indefinite. In the stipulation of facts, the only mention of this employment is in the attached schedules which show: (1) That from April 23 to December 7, 1956, he was employed by the firm of Haas & Haynie in Antioch, where he received compensation of $3,838.70; *163 and (2) that in the joint income tax return which he and his wife filed for the year 1956, he claimed a deduction for "quarters and subsistence" in both San Mateo and in Antioch, in the single lump sum amount of $1,166, without indicating what items or what amounts are attributable to each of these locations. During petitioner's testimony it was stated: Q. [by petitioner's counsel] Did you in 1956, during that year did you commute from Antioch to Modesto? A. I drove that year. Q. You drove back and forth, is that correct? A. That is right. This tends to indicate that he did not maintain any living quarters in Antioch; and none of his automobile expenses for travel between there and Modesto were claimed as a deduction on the return of him and his wife for the year 1956. Substantially the only additional evidence pertaining to the Antioch job is: That at the time he went there, he had been working for a firm in San Mateo, with which he went back to work in January 1957; that there was work for him in San Mateo, at the time he accepted employment with the other firm in Antioch; and that his reason for going to Antioch was that he was acquainted with the superintendent there, *164 for whom he had previously worked in 1955. All such evidence pertaining to petitioner's Antioch employment is insufficient, in our opinion, to permit a determination as to whether or not he established a new post of duty in Antioch at the time he went there. It also is insufficient, in our opinion, to enable petitioner to meet his burden of establishing error in respondent's determination that he was "not in a travel status 'away-from-home' while performing duties in * * * Antioch." We approve the respondent's determinations as to each of the taxable years involved. Decision will be entered for the respondent. Footnotes
1. Total $2,623.56 not allocated to periods of employment.↩